Anthony J. AMENDOLA,
Plaintiff–Appellant,

v.

Gary R. BAYER, Defendant–Appellee.

No. 89–1218.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 3, 1989.
Decided July 24, 1990.

Frederic F. Brace, Jr., C. Timothy Smoot, Kristi L. Browne, Chicago, Ill., for plaintiff-appellant.

Carol J. Gerner, Jerald Esrick, Craig M. White, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The plaintiff-appellant, Anthony J. Amendola, alleged that the defendant-appellee, Gary R. Bayer, breached an oral agreement between them and breached his fiduciary duty to Amendola when Bayer abandoned a group attempting to buy out a company. The district court granted summary judgment in favor of Bayer. We affirm.

### I.

This case arises out of the sale of Quaker Oats Company's in-house advertising agency and wholly-owned subsidiary called AdCom, Inc. In late 1984, Quaker considered selling AdCom. The company asked Bayer, president of AdCom, to determine suitable merger candidates for AdCom. One of the advertising agencies that Bayer contacted was Backer & Spielvogel ("B & S"). After meeting with representatives of B & S, Bayer determined that B & S would be a good merger partner.

Simultaneously, Bayer spoke with Amendola about the potential sale of AdCom. Amendola and Bayer had known each other for several years because they had previously worked at the same advertising firm. The two men discussed the possibility of forming a group and using a leveraged buy out ("LBO") to purchase AdCom.

Soon thereafter, B & S made an offer to Quaker officials to purchase AdCom. The offer was rejected. Later, the LBO group made an offer to Quaker to purchase AdCom. That offer also was not accepted. The competition between B & S and the LBO group continued for several months. Shortly before June of 1984, Bayer had concluded that a merger with B & S was better for both AdCom and Quaker. In June of 1984, representatives from B & S and Quaker reached an agreement in principle for the sale of AdCom to B & S. The merger was completed to form a new company called Backer & Spielvogel–Chicago.

On October 30, 1985, Amendola filed a complaint in district court against Bayer and others.[1] The complaint alleged that

---

1. The other defendants are no longer part of the case.

Bayer asked Amendola to contribute his business expertise and participate in the LBO of AdCom. It further alleged that Amendola and Bayer reached an oral agreement in which Amendola would assist with the LBO in exchange for the right to purchase an equity interest in the new company and hold the positions of Chairman of the Board and Chief Operating Officer with a three-year employment contract.

Counts One and Two of the complaint were against Bayer and incorporated the above allegations. Count One alleged that Bayer breached the oral agreement and requested damages for lost income and equity in the new company. Count Two alleged that as a "promoter" of the LBO, Bayer owed a fiduciary duty to Amendola which was breached when Bayer abandoned the LBO. Count Two requested equitable relief in the form of a constructive trust on the interest held by Bayer in Backer & Spielvogel–Chicago. Bayer filed a motion to dismiss Count Two. The court denied the motion.

Subsequently, Bayer filed a motion for summary judgment on both counts. Supporting memoranda and depositions were filed by both parties. In his memorandum in opposition to the motion, Amendola argued that the oral agreement alleged in Count One could be enforced by means of a constructive trust.

The district court granted the motion. Regarding Count One, the court held that (1) the oral agreement was not enforceable in law against Bayer because it did not comply with the Illinois Statute of Frauds, and (2) the requirements for the imposition of a constructive trust were not satisfied. Regarding Count Two, the court held that no reasonable jury could find by clear and convincing evidence that a fiduciary relationship by implication existed between Amendola and Bayer. Amendola filed a motion to reconsider the grant of summary judgment and a motion for leave to file an amended complaint. The court denied both motions.

On appeal, we will address two issues: (1) whether the grant of summary judgment in favor of Bayer on both counts was appropriate; and (2) whether the district court abused its discretion by denying Amendola's motion for leave to amend his complaint.

## II.

### A. *Count One*

Amendola does not contest the district court's ruling that the oral agreement is unenforceable in law. Instead, he argues that the oral agreement could be enforced by means of a constructive trust. An issue which we will address preliminarily concerns the requirements under Illinois law for the imposition of a constructive trust. The district court interpreted Illinois law to require, in the absence of coercion, duress, or mistake, either (1) fraud, or (2) the abuse of a fiduciary relationship. Amendola argues here, as he did in his motion to reconsider, that recent Illinois decisions have expanded the circumstances under which a constructive trust may be imposed to include all situations when it is necessary to correct unjust enrichment. *Chicago Park Dist. v. Kenroy, Inc.*, 107 Ill.App.3d 222, 63 Ill.Dec. 134, 437 N.E.2d 783 (1982); *Zack Co. v. Sims*, 108 Ill.App.3d 16, 63 Ill.Dec. 732, 438 N.E.2d 663 (1982); *Roth v. Carlyle Real Estate*, 129 Ill.App.3d 433, 84 Ill.Dec. 699, 472 N.E.2d 836 (1984); *People ex rel. Daley v. Warren Motors, Inc.*, 114 Ill.2d 305, 102 Ill.Dec. 400, 500 N.E.2d 22 (1986).

All of the cases cited by Amendola for expanding the circumstances under which a constructive trust may be imposed are from lower courts in Illinois. Generally, language in these cases suggests that wrongful conduct other than fraud or an abuse of a fiduciary relationship can warrant the imposition of a constructive trust if equity so requires. The Supreme Court of Illinois has not expanded the circumstances under which a constructive trust may be imposed. Indeed, it recently said:

> A constructive trust is generally imposed in two situations: first, where actual or constructive fraud is considered as equitable grounds for raising the trust and, second, where there is a fiduciary duty

and a subsequent breach of that duty. A constructive trust may also arise when duress, coercion or mistake is present. Some form of wrongdoing is a prerequisite to the imposition of a constructive trust.

A constructive trust will not be imposed unless the complaint makes specific allegations of wrongdoing, such as fraud, breach of fiduciary duty, duress, coercion or mistake. Furthermore, the grounds for imposing a constructive trust must be so clear, convincing, strong and unequivocal as to lead to but one conclusion.

*Suttles v. Vogel,* 126 Ill.2d 186, 127 Ill.Dec. 819, 822–23, 533 N.E.2d 901, 904–05 (1988) (citations omitted); *see also, Charles Hester Enters., Inc. v. Illinois Founders Ins. Co.,* 114 Ill.2d 278, 102 Ill.Dec. 306, 499 N.E.2d 1319 (1986). Thus, we conclude that the district court correctly applied the law of Illinois as enunciated by the Supreme Court of Illinois. In any event, we note that the case before us does not turn on the differences between the Supreme Court of Illinois decisions and the lower Illinois court decisions. Despite some broad *dicta,* the lower court cases have retained a requirement of wrongful conduct for a constructive trust to be imposed. As discussed below, Count One does not include allegations of this type of wrongful conduct.

■ Count One alleged that Amendola performed his promises under the agreement with Bayer, but Bayer breached the agreement by abandoning the LBO. As a result, Amendola lost future income and equity in the company. The only wrongful conduct alleged in Count One is the breach of an (unenforceable) agreement by Bayer.[2] This conduct is not analogous to the wrongful activity that has been found to warrant the imposition of a constructive trust. Indeed, a breach of contract specifically has been found to *not* warrant the imposition

of a constructive trust. *Evans v. Berko,* 408 Ill. 438, 97 N.E.2d 316 (1951); *Bachewicz v. American Nat. Bank and Trust,* 126 Ill.App.3d 298, 81 Ill.Dec. 294, 306, 466 N.E.2d 1096, 1108 (Ill.App.1984), *rev'd on other grounds,* 111 Ill.2d 444, 95 Ill.Dec. 827, 490 N.E.2d 680 (1986). Thus, we affirm the grant of summary judgment on Count One.

### B. *Count Two*

■ Count Two of the complaint alleged that a fiduciary duty arose between Bayer and the participants in the attempted LBO, including Amendola, because Bayer was the promoter of the LBO. Bayer allegedly breached his fiduciary duty to Amendola by abandoning the LBO and uniting with B & S to acquire AdCom. Amendola requested that a constructive trust be imposed upon Bayer's interest in Backer & Spielvogel–Chicago for the benefit of Amendola.

Clearly, the breach of a fiduciary duty, if proved, would warrant the imposition of a constructive trust under Illinois law. Amendola conceded in an early pleading that he did not allege the existence of a fiduciary relationship as a matter of law. Thus, as the district court properly concluded, a claim under Count Two would have to be based on a fiduciary relationship by implication.[3] The existence of such a relationship must be proved by clear and convincing evidence. *Ray v. Winter,* 67 Ill.2d 296, 10 Ill.Dec. 225, 229, 367 N.E.2d 678, 682 (1977).

Under Illinois law, proof of a fiduciary or confidential relationship requires a showing that one party has reposed trust and confidence in another who thereby gains influence and superiority over the other. *Ray,* 10 Ill.Dec. at 229, 367 N.E.2d at 682; *Metropulos v. Chicago Art Glass, Inc.,* 156 Ill.App.3d 727, 109 Ill.Dec. 229, 235, 509 N.E.2d 1068, 1074 (1987). The factors to be considered in determining the existence

---

**2.** To the extent that Count One and the argument relating to this count in the memorandum in opposition to the motion for summary judgment can somehow be construed to also allege an abuse of a fiduciary duty, this contention is addressed in the discussion of Count Two.

**3.** This disposes of Amendola's contentions that a fiduciary duty arose because he and Bayer were "partners" or "joint adventurers" because these contentions relate to a fiduciary relationship as a matter of law.

of a fiduciary or confidential relationship are the degree of kinship of the parties, the disparity in age, health, mental condition, education and business experience between them, and the degree of trust placed in the dominant party. *Kester v. Crilly,* 405 Ill. 425, 91 N.E.2d 419, 423 (1950); *Taino v. Sanchez,* 147 Ill.App.3d 871, 101 Ill.Dec. 247, 250, 498 N.E.2d 571, 574 (1986).

In applying these factors, the district court set forth the following as the undisputed facts relating to this issue:

> Both Amendola, who is sixty-two years old, and Bayer, who is forty-two, were senior executives in the advertising business for many years prior to 1985. Bayer had previously reported to Amendola while they both were employed at [the advertising firm of] D'Arcy, MacManus and Masius. Bayer approached Amendola to determine whether he "would contribute [his] considerable knowledge, business acumen and experience in arranging the buy-out" at issue.... The parties' attorney, Lou Susman, believed that Amendola had competence regarding pertinent matters that Bayer lacked. The parties had equal roles in attempting to arrange the buy-out. Moreover, there are no facts which indicate that Amendola had some sort of mental or physical infirmity that could render him unduly susceptible to Bayer's influence.

These facts illustrate that Bayer did not gain influence and superiority over Amendola by acquiring his trust and confidence. We agree with the district court that given these undisputed facts, no reasonable jury could clearly and convincingly find that a fiduciary relationship arose between Amendola and Bayer. Thus, we affirm the grant of summary judgment on Count Two.

### III.

■ Finally, Amendola claims that the district judge erred by denying his motion for leave to amend his complaint after summary judgment was granted against him. This procedural matter is governed by federal law. We review such a denial by a district judge for an abuse of discretion. *Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Fort Howard Paper Co.* *v. Standard Havens, Inc.,* 901 F.2d 1373, 1379–81 (7th Cir.1990). Indeed, we have said that "[a] trial judge is particularly well-situated to judge the worthiness of a plaintiff's motion to amend his complaint, having been involved in the progress of the case throughout its development and having viewed first-hand the party's diligence or lack thereof." *Bohen v. City of East Chicago,* 799 F.2d 1180, 1185 (7th Cir.1986).

Federal Rule of Civil Procedure 15(a), in part, provides that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The Supreme Court has stated that leave will generally be given unless factors such as undue prejudice, undue delay, or bad faith are present. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

Here, Amendola wanted to amend his complaint to assert that during discovery his counsel discovered false representations made by Bayer to Amendola which would give rise to a cause of action for fraud. The district judge held that three reasons warranted the denial of the motion.

First, Amendola's delay in his attempt to amend the complaint was inexcusable. Discovery, other than experts, had not been conducted for more than 19 months. Amendola's counsel should have been aware of the facts underlying this claim by the time that discovery ceased 19 months earlier because the facts are within the personal knowledge of Amendola. The court had already resolved several motions and the deadlines for filings had passed. In sum, the district judge held that "[t]he plaintiff has failed to tender *any* reason, let alone an acceptable one, for his failure to seek leave to amend his complaint *prior* to the occurrence of the above events." Second, Bayer would be unduly prejudiced if the leave to amend the complaint were granted. The final disposition of the case would be unduly delayed, the amendment would bring a new claim, and the amendment would require new discovery. Third, the district judge held that the delay which would result if she would grant the leave to amend would impair the public interest in prompt resolution of legal disputes.

The reasons given by the district judge in denying the motion for leave to amend the complaint are valid and are supported by the record. Thus, the district judge clearly did not abuse her discretion by denying the motion for leave to amend the complaint.[4] *See Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1225–26 (7th Cir.1988); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 908–09 (7th Cir.1988); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 625–26 (7th Cir.1987); *Bohen*, 799 F.2d at 1185.

## IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**4.** We note that, because summary judgment had been entered before Amendola filed his motion for leave to amend his complaint, the district judge could have denied the motion on other grounds. In this circuit, after a judgment has been entered, a party must have the judgment reopened pursuant to Federal Rule of Civil Procedure 59(e) or 60(b) and then request leave to amend pursuant to Rule 15(a). *Scott v. Schmidt*, 773 F.2d 160, 163 (7th Cir.1985); *Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185, 1196–97 (7th Cir.1985); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1111 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); *see* 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 1489, pp. 692–94 (1990) ("Most courts faced with the problem have held that once a judgment is entered the filing of an amendment cannot be allowed until the judgment is set aside or vacated under Rule 59 or Rule 60.... This approach appears sound. To hold otherwise would enable the liberal amendment policy of Rule 15(a) to be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation"). Here, the district judge initially could have addressed Amendola's motion to reconsider, and when that motion was denied it would have been unnecessary to address the merits of the motion for leave to amend. Instead, she chose to address the merits of the motion and did not abuse her discretion in denying the same.