(No. 31668.—

LINCOLN B. EVANS, Appellant, *vs.* JOSEPH A. BERKO *et al.*, Appellees.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

Melvin B. Lewis, and Samuel Solomon, both of Chicago, (Abram E. Adelman, of counsel,) for appellant.

Malone & Herbolsheimer, of La Salle, and Hibbs, Pool & Langer, of Ottawa, (William I. Hibbs, and George L. Herbolsheimer, of counsel,) for appellees.

Mr. Justice Gunn delivered the opinion of the court:

Plaintiff, Lincoln B. Evans, filed a complaint in the circuit court of La Salle County against Joseph A. Berko *et al.*, alleging that Berko held the legal title to certain improved real estate in the city of La Salle, but that he was in fact a trustee for the benefit of the plaintiff, and should be decreed to reconvey said property to the plaintiff upon being reimbursed for moneys advanced and for the cost of improvements made. The theory of the plaintiff is that defendant is a constructive trustee, and liable to account to the plaintiff and reconvey said property upon being reimbursed, while defendant claims he is a fee-simple owner because plaintiff failed to exercise an option to repurchase. Thus, the controversy involves a freehold. The circuit court dismissed the case for want of equity.

The complaint alleges that on November 2, 1944, the plaintiff conveyed said real estate by ordinary warranty deed to the defendant, Joseph A. Berko, and that on the same date a contract was made between the parties, the purport of which was that the plaintiff was given an option

to repurchase the property upon making certain payments on or before two years from that date. The provisions of this contract will be discussed later. The complaint further alleges that Berko, who was a real-estate broker, was to place the property in an excellent state of repair, fully rented, with enhanced income, and subject to a total encumbrance of not more than $80,000 within two years, and Evans agreed to relinquish the property for that period of time, and that Berko was to receive for his efforts the consideration set out in the contract, and that the encumbrance at that time was about $55,000; that Berko, after obtaining the deed, made extensive improvements, and plaintiff was never able to get a detailed accounting, but that before the end of the two-year period mentioned in the contract he gave notice he would exercise his option to repurchase, and offered to pay the defendant not to exceed $80,000, and other charges shown by an accurate accounting.

The allegations of this complaint are denied by the defendants. The contract attached to the complaint discloses that it was entitled "Option and Contract," and recited that Evans had conveyed the premises to defendant, Berko, by warranty deed, and that thereupon Berko agreed to the following: (1) That he would grant Evans specific option to repurchase the premises within twenty-four months upon the payment of the following sums: (a) what Berko was required to pay to redeem the premises from the mortgage upon the premises, plus (b) such unpaid bills, including taxes, judgments, insurance and attorney fees as Berko was required to pay; (c) plus such improvements, alterations and decorations as said Berko would be required to make and pay for, excepting the portion of said amount which Berko was to pay out of the rental proceeds; (d) plus such sum or sums Berko advanced to Evans; (e) plus six per cent on all money advanced. Berko agreed: (2) to use his best efforts to rent the building on a profitable basis and secure desirable ten-

ants; (3) to redeem said premises from the existing mortgage indebtedness, and pay all outstanding judgments, tax liens, attorney fees, insurance and other obligations charged against the premises; and (4) that Berko was to be allowed to make such improvements, alterations and decorations as were necessary to secure desirable tenants. In case Evans exercised his option he was to give notice thereof in writing, and thereupon Berko was to render an account of money necessary to repay his disbursements, plus 5 per cent of all rentals collected, plus fifty per cent of the first month's rent of each new office or apartment rented, and 6 per cent on all capital outlay. Berko was also required to pay Evans the sum of $125 per month for and during the period of the option. The contract also contained this provision: "That in the event the said Evans does not exercise said option within twenty-four months of the date of this agreement, as aforesaid, then and in that event he shall have no right, interest, lien, or claim of any kind or character whatsoever against said premises or against said Berko, individually."

The testimony of Evans did not support any of the allegations of his complaint. He claimed he had been trying to get an audit but failed. However, he introduced in evidence the account delivered to him by Berko, which shows the amount with which Evans was debited each month from November, 1944, to and including April, 1946. His testimony also showed he had his own auditor examine the books, but that he neither produced his accountant, nor the audit made by his accountant. He called Berko as his witness, and his testimony as well as his exhibit disclosed that at the time of the transaction between the parties being entered into there was a mortgage upon the premises on which there was then due about $95,000; that it was in the course of foreclosure in the United States court; that Evans was totally unable to refinance it, and that at that time the property produced a monthly rental

of about $600. Berko paid off the mortgage by settling it for the sum of $51,000, and immediately borrowed, on the same premises and other properties owned by himself, the sum of $55,000 to pay the mortgage, judgments and delinquent taxes, and other expenses. He then proceeded to make improvements, of all of which Evans was fully aware, and so rehabilitated and improved the premises that the property all became rented on good terms, and that the rents were increased to more than $1500 per month. During this period of time he also advanced to Evans $125 per month.

It is also claimed that because Berko was a licensed real-estate broker a confidential or fiduciary relationship was created. It is true that some six months before the transaction complained of was entered into, Berko did attempt to refinance the loan for Evans but could procure no one who would loan the money to Evans, and the matter was then dropped. It was months later when Evans came to Berko and earnestly requested him to do something, that this arrangement was entered into by which Evans was relieved of his liability to pay almost $100,000 in judgments and mortgages, and receive the sum of $125 per month, and Berko took the risk of rehabilitating the property, and making it a profitable venture.

The plaintiff has failed to show he tendered or offered to pay Berko the amount to which he was entitled under the terms of his contract. His evidence does not disclose that a proper account was not given. As a matter of fact the plaintiff is attempting to make his own terms of repurchase by saying there was an oral understanding that the total amount should not exceed $80,000, and if his complaint were sustained it would mean that the written contract between the parties was superseded by a prior oral one.

We are unable to see how the plaintiff has established that a constructive trust existed between himself and the

defendant Berko and his grantees. The facts show an outright conveyance by warranty deed, and, likewise, an option to repurchase upon the payment within two years of a sum to be fixed according to the terms of the contract. There was no obligation upon the part of Evans to repay any of these sums. If he did not exercise his option he was out of debt and the risk was upon Berko. A constructive trust does not arise where land is conveyed by deed absolute, where no condition or reservation is made therein. (*Lancaster* v. *Springer,* 239 Ill. 472; *Mayfield* v. *Forsyth,* 164 Ill. 32; *Biggins* v. *Biggins,* 133 Ill. 211.) A constructive trust does not arise out of a breach of a written contract. (*Englestein* v. *Mintz,* 345 Ill. 48.) And neither can a constructive trust be based upon a theory that a prior oral contract supersedes a written contract, as the rule is universal that all prior negotiations, discussions and propositions are merged into the writing, and the rights of the parties governed by it. *Daytona Gables Development Co.* v. *Glen Flora Investment Co.* 345 Ill. 371; *Decatur Lumber and Manufacturing Co.* v. *Crail,* 350 Ill. 319; *Harley* v. *Magnolia Petroleum Co.* 378 Ill. 19.

The written agreement between the parties did not place any limitation upon the amount to be expended by way of improvements, decorations and alterations necessary to procure tenants. As a matter of fact, considering the results achieved, we consider the efforts of Berko very satisfactory. He took over a building with approximately $100,000 indebtedness and $600 a month income, and in two years' time, by the net increase of indebtedness of approximately $18,000, had almost trebled its income, and had a building that was in first-class condition, tenanted by first-class tenants.

A constructive trust is founded upon fraud, either actual or constructive. (*Streeter* v. *Gamble,* 298 Ill. 332; *Kochorimbus* v. *Maggos,* 323 Ill. 510.) No actual fraud of

any kind is shown in the present case, nor any fiduciary relationship between the parties, out of which a constructive trust could arise. To create a constructive trust, fraud must exist at the time of the transaction, or be brought about by undue influence arising from a fiduciary relation. *Davids* v. *Davids,* 333 Ill. 327.

It is suggested in the brief of appellant that the transaction partakes of the nature of a mortgage. No claim of this kind is made in the complaint, and under the facts as disclosed in the record in this case it is impossible to consider the transaction a mortgage. Evans was not obligated to pay Berko anything. The risk was wholly that of the defendant. A mortgage is for the purpose of securing a debt, and if there is no debt there is no mortgage. (*DeVoigne* v. *Chicago Title and Trust Co.* 304 Ill. 177; *Friend* v. *Beach,* 276 Ill. 397.) Not only must there be a debt, but it must be due upon a definite date, or at a time that can be rendered definite. (*Caraway* v. *Sly,* 222 Ill. 203; *Illinois Trust Co.* v. *Bibo,* 328 Ill. 252.) It seems to us that the arrangement between the parties was clear and explicit. Evans was hopelessly involved; he could not obtain credit to either refinance his mortgage or to improve his building to make it profitable. He sought Berko, who apparently had property, and the arrangement was entered into. For practical purposes Evans had already lost his property. Berko undertook to relieve him of personal liability on the mortgage and pay the judgments and bills against the property, make it habitable, and give Evans the option at the end of two years to repurchase the property on the terms outlined above. This was a legitimate and proper subject of contract, (*Kimmel* v. *Bundy,* 302 Ill. 514; *Rue* v. *Dole,* 107 Ill. 275,) and has been fully carried out upon the part of the defendant, and not complied with by the plaintiff. When parties have reduced their contract to writing, so its meaning can be plainly understood, a dissatisfied party cannot later, by alleging a different

understanding was had between the parties before the written contract was entered into, change the transaction into a constructive trust, or into a mortgage.

The decree of the circuit court of La Salle County in dismissing the complaint was proper, and its decree is accordingly affirmed.

*Decree affirmed.*