167 Ill. App.3d 807 (1988)
521 N.E.2d 1277
In re ESTATE OF JOHN J. PUETZ, Deceased (Vera M. Puetz, Adm'r with Will Annexed, Petitioner-Appellant,
v.
First National Bank of Skokie, as Trustee, et al., Respondents-Appellees).
No. 2-87-0509.
Illinois Appellate Court  Second District.
Opinion filed April 13, 1988.
Rehearing denied May 12, 1988.
*808 David W. McArdle and Douglas E. Matthews, both of Zukowski, Rogers & Flood, of Crystal Lake, for appellant.
J. Stirling Mortimer, of Dalton, for appellees.
Reversed and remanded.
JUSTICE WOODWARD delivered the opinion of the court:
Petitioner, Vera Puetz, filed suit in the circuit court of McHenry County against the respondent land trustee, First National Bank of *809 Skokie, and the land trust's beneficiaries, John H. Puetz, Marilyn Cherry, and Suzanne P. Wregge, to set aside the inter vivos land trust created by her deceased husband, John J. Puetz. Petitioner alleged that the creation of the land trust constituted a fraud upon her marital rights. Petitioner sought to impose a constructive trust on the trust res to the extent of her statutory share as surviving spouse. (Ill. Rev. Stat. 1985, ch. 110 1/2, par. 2-8.) The trial court granted respondents' motion for summary judgment, and this appeal followed. We reverse and remand.
On appeal, petitioner raises two issues: (1) the trial court erred in granting summary judgment to respondents because questions of material fact exist, and (2) as a matter of law, decedent's revocable trust operated as a fraud on her marital rights. For purposes of this appeal, we need only address the first issue.
When the motion for summary judgment was made, the evidence consisted of the following: the pleadings, the affidavit and the deposition of the petitioner, the affidavit and deposition of decedent's son, John H. Puetz (a land trust beneficiary), income tax statements for the decedent's estate, and the documents related to trust No. 5258, a former trust of the decedent, and trust No. 5452, the subject of this litigation.
The relevant facts appearing in the above-described evidence are as follows. Petitioner testified by deposition that after graduating from high school, she clerked in a shoe store; she then married John J. Walsh, who died after they had been married for 22 years. During this marriage, petitioner did not work. After her first husband's death, petitioner worked two jobs while her daughter attended college. After another period of unemployment, petitioner went to work as a part-time bookkeeper for decedent. They married on October 24, 1964, and petitioner did not work after their marriage. Decedent and petitioner lived together as husband and wife until decedent's death on June 8, 1982. Petitioner testified that decedent never informed her of the disputed trust No. 5452.
At the time of his death, decedent owned in joint tenancy with the petitioner a house valued at $95,000. Petitioner was a beneficiary of several insurance policies and held joint bank accounts with decedent. The total approximate value of these accounts and policies was $28,000. This was the value of the assets received by petitioner by reason of decedent's death.
On January 30, 1962, decedent and his first wife, Frances, executed a trust agreement (trust No. 5258). They were joint beneficiaries of said trust, and when Frances died in or about 1963, the decedent *810 became the sole beneficiary.
On April 6, 1966, decedent executed the trust agreement (trust No. 5452) that is the subject of this lawsuit. By this instrument, which named the children by his first marriage as sole beneficiaries upon his death, substantially all of decedent's real property was included in trust for his lifetime. The res of land trusts Nos. 5258 and 5452 was essentially the same. At the time of decedent's death, the res in the trust No. 5452 had an estimated aggregate value of $450,000.
On January 13, 1983, the decedent's will was admitted to probate; and the petitioner was appointed administrator with will annexed. Petitioner filed an affidavit of heirship indicating that the decedent was survived by three adult children, John H. Puetz, Marilyn Cherry, and Suzanne P. Wregge (respondents). On March 17, 1983, an inventory of the estate was filed; this included a cause of action to recover the res of trust No. 5452 mentioned therein.
On September 16, 1983, petitioner filed notice of her renunciation of the decedent's will, and on September 28, 1984, petitioner filed her second amended citation against respondents for discovery and recovery of one-third of the res in trust No. 5452, dated April 6, 1966, wherein First National Bank of Skokie is trustee.
On December 28, 1984, respondents filed their motion for summary judgment. On January 23, 1985, petitioner filed her response to the motion for summary judgment, and on August 25, 1986, the trial court denied respondents' motion for summary judgment. On the same day, respondents filed their motion to reconsider, a response thereto was filed by petitioner on September 10, 1986, and a memorandum opinion of the trial court, discussed below, was entered on December 31, 1986, granting said motion to reconsider and granting respondents' motion for summary judgment.
On January 21, 1987, petitioner filed a motion to reconsider with the trial court; this motion was denied by court order dated May 1, 1987, and this appeal followed.
 1 We begin by noting that the law regarding summary judgment is well established. The extreme nature of the summary judgment remedy requires that the trial court exercise extraordinary diligence in its review of the record so as not to preempt a litigant's right to present fully the factual basis for the claim. (Estate of Kern v. Handelsman (1983), 115 Ill. App.3d 789.) On a motion for summary judgment, the trial court must determine whether there is a genuine issue as to any material fact that requires a trial. (Wogelius v. Dallas (1987), 152 Ill. App.3d 614.) The purpose of summary judgment is not to try the issues but to determine whether any triable issue *811 exists. (Kobus v. Formfit Co. (1966), 35 Ill.2d 533.) The trial court must examine the pleadings, affidavits, depositions, and exhibits to determine that no issue of material fact exists and that, as a matter of law, movant is entitled to judgment. (Motz v. Central National Bank (1983), 119 Ill. App.3d 601.) For purposes of this motion, the trial court must strictly construe the evidence against the movant. Johnson v. St. Bernard Hospital (1979), 79 Ill. App.3d 709.
 2 Further, it is well established that an owner of property has an absolute right to dispose of his property during his or her lifetime in any manner he or she sees fit. The owner may do so even if the trust is created to diminish or defeat the statutory marital interest of the surviving spouse, unless the transfer lacks the essential element of present donative intent and is therefore colorable or illusory and tantamount to a fraud on his or her marital rights. Johnson v. La Grange State Bank (1978), 73 Ill.2d 342.
In Johnson, our supreme court wrote:
"The cases do not always differentiate between the terms `illusory' and `colorable'. However, it is acknowledged, within the sphere of the subject that we are now discussing, that an illusory transfer is one which takes back all that it gives, while a colorable transfer is one which appears absolute on its face but due to some secret or tacit understanding between the transferor and the transferee the transfer is, in fact, not a transfer because the parties intended that ownership be retained by the transferor. [Citation.]
The intent to defraud is found in the nature of the transfer, whether it be illusory or colorable. In either event the transfer is a fraud on the marital rights because the transferor in reality had no intent to convey any present interest in the property but, in fact, intended to retain complete ownership." (Johnson v. La Grange State Bank (1978), 73 Ill.2d 342, 359.)
Whether or not the transfer of property is a fraud on marital rights turns on the facts of each case. Johnson, 73 Ill.2d at 357.
 3 Where a life estate is reserved in the whole res, the existence of a present intent to give now the future fee interest must be subjected to special scrutiny to make certain that the donative intent is present and not merely testamentary. (Toman v. Svoboda (1976), 39 Ill. App.3d 394.) Illinois case law outlines some elements of the special scrutiny to be applied where applicable. In Toman v. Svoboda (1976), 39 Ill. App.3d 394, 404, the court found that a principal determination of present donative intent as opposed to testamentary intent was the degree of control the donor exerted over the donee's interest *812 in the property.
 4 In Montgomery v. Michaels (1973), 54 Ill.2d 532, the court described further circumstances which bear upon a determination of the transferor's intent in making the inter vivos transfer of legal title, namely, the secretive manner, or lack thereof, in which the decedent acted regarding the surviving spouse; what the decedent might have said to others as to his intent in making the apparent gift; the value of the decedent's estate, and the value of the property left by him to the surviving spouse; the proximity in time between the donative transfer and the donor's death; and, finally, all factors which might indicate an intent to defraud the surviving spouse of her statutory share. (Montgomery, 54 Ill.2d at 535.) The Toman court noted that these circumstances could be applied to the determination of an intent to defraud the surviving spouse of her statutory marital right by making an illusory or merely colorable inter vivos donative transfer, lacking the essential element of present donative intent. Toman v. Svoboda (1976), 39 Ill. App.3d 394.
The court in Johnson v. La Grange State Bank (1978), 73 Ill.2d 342, found as a significant circumstance the surviving spouse's financial condition as compared to that of the beneficiaries.
With the above-mentioned statements of our supreme and appellate courts in mind, we now look at the facts alleged by petitioner to determine if a triable issue of material fact exists. As stated above, these facts must be strictly construed against the movants, i.e., respondents.
In her second amended citation for discovery and recovery, petitioner alleged the following:
"10. [D]uring the life of decedent:
(a) He retained the power to revoke;
(b) He retained the whole beneficial interest, together with absolute and unqualified control over the res;
(c) He retained all incidents of fee ownership, including the right to receive proceeds and income from rentals, mortgages, sales or other dispositions of the res;
(d) He retained the right to assign and transfer his interest in the property, as well as manage and control the selling, renting and handling of the res of the Trust;
(e) He retained power to direct all acts of the Trustee.
11. During his lifetime, Decedent exercised his reserved power to receive proceeds and income from the res of said Trust, thereby depleting its res.

12. During his lifetime, Decedent exercised his reserved *813 power to manage and control the renting of the Trust res.

13. During his lifetime, Decedent exercised his reserved power to direct certain acts of the Trustee.
14. At no time during his lifetime did Decedent part with exclusive dominion and control of the Trust or the Trust res."
In their answer to petitioner's second amended citation for discovery and recovery, respondents admitted the allegations of paragraphs Nos. 10, 12, and 13. In answer to paragraph No. 11, respondents denied that decedent depleted the trust. Respondents denied paragraph No. 14 and further stated that during his lifetime, decedent made provision for the succession of the trust res to his children following his death.
Petitioner further argues that the following paragraph in respondent's motion for summary judgment demonstrates the decedent's absolute control and power of direction over the trust res during his lifetime:
"It is the fact that, pursuant to the terms of Land Trust No. 5452, the Settlor-decedent did retain the power to revoke, did retain the beneficial interest thereunder and control over the res for his life, did retain all the incidents of fee ownership for life, including the right to receive proceeds and income from rentals, mortgages, sales or other dispositions of the res, did retain the right to assign and transfer his interest in the property, as well as manage and control the selling, renting and handling of the res of the trust and, lastly, did retain the power to direct all acts of the Trustee."
Petitioner asserts that the only "thread of ownership" that decedent did not retain was legal and equitable title, both of which could be revoked at any time.
 5 As petitioner correctly argues, the extent to which retained powers are exercised is a material question of fact for the trier of fact to consider. Here petitioner alleges that decedent exercised his retained powers, and respondents have made qualified admissions that decedent did exercise certain of the retained powers. Where the pleadings, affidavits, depositions and/or exhibits indicate that the decedent did, in fact, exercise some control over the trust, the issue then becomes the degree to which decedent exercised the retained powers and whether or not said exercise of retained powers makes the transfer colorable or illusory.
Of further importance are the petitioner's allegations regarding present donative intent at the creation of the inter vivos trust that must come under special scrutiny. As noted above, consideration must *814 be given to the secretive manner (or lack thereof) in which the grantor created the trust. (Toman, 39 Ill. App.3d at 399.) In her deposition, petitioner testified that the decedent never told her about the creation of trust No. 5452, and respondents dispute this assertion. It is the trier of fact's responsibility to determine the extent, if any, of the secrecy surrounding the trust's creation.
Petitioner alleged also that there was a great disparity between the value of the decedent's estate and the value of the property left to her. (Toman, 39 Ill. App.3d at 399.) Also, petitioner testified that the decedent told her that he would give her "a factory" upon his death, an allegation which is disputed by respondents. These are both elements which bear upon the decedent's intent in creating the land trust. Toman, 39 Ill. App.3d at 399.
We conclude that there are a number of material questions of fact that the trier of fact must decide after an evidentiary hearing.
Accordingly, we reverse the decision of the court below and remand this case for further proceedings consistent with this opinion.
Reversed and remanded.
NASH and REINHARD, JJ., concur.