THOMAS LECRONE *et al.*, Plaintiffs, v. HARRIET LECKRONE, Indiv., *et al.*, Defendants (Harriet Leckrone, Indiv., Defendant and Petitioner-Appellee; Thomas W. Murphy *et al.*, Respondents-Appellants).

First District (4th Division)   No. 1—89—1458

Opinion filed September 19, 1991.—Rehearing denied November 13, 1991.

McMORROW, J., dissenting.

Joseph R. Marconi and Johnson, Cusack & Bell, Ltd., both of Chicago, for appellants.

Irving Lewis, of Des Plaines, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Respondents, Thomas W. Murphy and Johnson, Cusack & Bell, Ltd., appeal from an order of the circuit court granting petitioner, Harriet Leckrone, sanctions in the amount of $7,000 pursuant to section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—611). Harriet Leckrone was also one of the defendants in the underlying suit in this appeal. On appeal, respondents raise the following issues: (1) whether the trial court erred in imposing sanctions against them for their filing of the underlying complaint against

defendants, Harriet Leckrone and William J. Flotow; and (2) whether the amount of the sanctions imposed was excessive.

We reverse.

The facts, as we can discern from the record, reveal that on August 9, 1974, Anthony J. Lecrone and his wife, Hattie Lecrone, each executed a will. Anthony and Hattie are the parents of Charles Lecrone and Gordon L. Leckrone and the grandparents of the plaintiffs in the underlying suit. The plaintiffs in that suit are Thomas C. Lecrone, Connie Lecrone Loper, Scott H. Lecrone, and Dale E. Lecrone. Plaintiffs' father, Charles Lecrone, predeceased his parents.

Pursuant to the terms of Anthony's will, all of his property was bequeathed to his wife, Hattie. In the event she predeceased him, one-half of his estate was bequeathed to his son, Gordon. The other one-half of Anthony's estate was to be divided, in equal shares, among plaintiffs.

The distribution of the assets in Hattie's will differed from the distribution in Anthony's will. Hattie provided that $1,000 was to be left to each of the four plaintiffs. Plaintiffs' $4,000 was to be paid out of her savings account at York Federal Savings and Loan Association. The balance of the savings account was bequeathed to Gordon. The remainder of her estate was bequeathed to her husband. In the event Anthony predeceased her, the remainder of her estate was left to Gordon. If Gordon did not survive her, plaintiffs were to receive, in equal shares, the remainder of the estate.

When Anthony and Hattie became infirm, they moved in with Gordon and his wife, Harriet Leckrone. Gordon and Harriet then purchased another house, in joint tenancy, from the proceeds of the sale of the Lecrones' home. The Lecrones resided with Gordon and his wife for approximately six months. The Lecrones were then placed in a nursing home, where they subsequently died.

Prior to the deaths of Anthony and Hattie Lecrone, Gordon allegedly contacted Thomas Lecrone regarding the terms of his parents' wills. Gordon expressed a concern that his wife, Harriet, and his children would not be provided for in the event he and Anthony predeceased Hattie. According to Gordon, his parents' entire estate would eventually pass on to plaintiffs to the exclusion of Harriet and his children. Gordon then allegedly entered into an oral agreement in which he agreed to distribute one-half of the property that he would inherit from his parents to plaintiffs.

Plaintiffs alleged that Gordon felt obligated to make such a promise because of the familial ties between himself and plaintiffs. This promised distribution was in spite of the fact that Hattie only be-

queathed $1,000 to each of the plaintiffs. In exchange for the promised distribution, plaintiffs alleged that Gordon extracted a promise from them that they would forgo half of their grandparents' estate to provide for Gordon's wife and children if Anthony died first and Gordon predeceased Hattie.

It was further alleged that reference is made to this oral agreement in a letter from Gordon dated December 19, 1980. Specifically, the letter states, in pertinent part:

"While [Anthony and Hattie] do have separate wills, they are outdated and could present some problems. There are no provisions for my widow [Harriet] or children in the event anything happened to me. Similarly there are no provisions for you and the other children to share equally with me should I survive them. As I told you, my feelings are that I would see that this was done, and I look to you to see that a similar fair distribution were made if I am not here to do it. I would ask that half of my share go to Harriet and the other half be split equally between my daughter Ginny and my son Don."

On November 15, 1981, Anthony died and pursuant to the terms of his will he left all his property to Hattie. Approximately four months later, Hattie died, leaving all of her property to Gordon. Plaintiffs did not receive the gifts provided for them in Hattie's will as her savings account had previously been closed.

In a letter dated July 27, 1982, Gordon informed Thomas Lecrone that Hattie's estate amounted to approximately $80,000. Pursuant to the parties' previous agreement, Gordon stated his intention to distribute half of the $80,000 estate to plaintiffs over a period of three years. Gordon's letter provides, in relevant part:

"The attorney is nearly ready to file the forms with the state and I think the $80,000 figure for the final estate will be very close. What I have in mind is the following: First, each of you will receive the $1,000 as set up in the will, then I plan to send each of you $3,000.

*** If all goes well next year I plan to send each of you another $3,000 and the same the following year.

***

*** Harriet is in complete accord with my plans but by putting it clearly in my will, it leaves no room for any problems."

In a subsequent letter, dated September 3, 1982, Gordon informed the plaintiffs that his mother's estate was worth approximately $79,127. He explained that although he was legally entitled to all of

the estate, he would send each of the plaintiffs $1,000 after the estate closed. Gordon wrote:

"I still feel as I always have that half of the state [*sic*] will be considered a moral obligation on my part to divide between the four of you. *** In the meantime, I have drwan [*sic*] up a new will that sets aside $9,800 for each of you (less any distribution I make to you)."

Plaintiffs allege that this letter also conforms to the parties' previous agreement that plaintiffs would receive approximately one-half of Hattie's estate. Under this arrangement, each of the plaintiffs would still receive approximately $10,000. Although the funds were to be distributed prior to Gordon's death, the will ensured that the agreed upon distributions would be made.

On October 15, 1982, Gordon gave each of the plaintiffs a check in the amount of $1,000. On May 4, 1985, Gordon executed his will in which he provided that each of the plaintiffs would receive $7,500 upon the maturity of a five- or seven-year security instrument.

On October 1, 1986, Gordon Leckrone died. On December 20, 1986, the co-executor of Gordon's will, William Flotow, sent a letter to plaintiffs informing them that the assets in Gordon's estate had been depleted to the point where there were no existing funds to make the promised distributions to plaintiffs.

On March 26, 1987, plaintiffs filed a complaint against Harriet Leckrone individually, and Harriet Leckrone and William Flotow as co-executors of the will of Gordon Leckrone. Plaintiffs, through their attorneys, the respondents, sought to impose a constructive trust upon the estate and its executors for the covert dissipation of the funds allegedly earmarked for plaintiffs. Plaintiffs also requested an accounting of Gordon's estate and injunctive relief to prevent further dissipation of the assets in the estate.

Prior to filing the suit, plaintiffs contacted respondents to determine whether they had a potential cause of action. In an opinion letter dated February 9, 1987, respondent Thomas W. Murphy on behalf of respondent law firm stated that a cause of action for a constructive trust could be maintained based on the case of *Labarbera v. Labarbera* (1983), 116 Ill. App. 3d 959. Respondents were then retained by plaintiffs to file the action against defendants.

Defendants, in response, proceeded to file a motion to dismiss plaintiffs' complaint. Prior to the time defendants' motion to dismiss was heard, respondents withdrew from further representation of plaintiffs. Respondents allegedly withdrew because of plaintiffs' failure to pay their legal fees. On January 27, 1989, in an *ex parte* hear-

ing, the trial court dismissed plaintiffs' complaint with prejudice. The trial court also retained jurisdiction of the case for purposes of hearing Harriet Leckrone's section 2—611 petition filed against both plaintiffs and respondents.

On March 29, 1989, plaintiffs and respondents filed a motion to strike and dismiss the section 2—611 petition. In an order dated May 23, 1989, the trial court awarded Harriet $7,000 in sanctions against respondents. Plaintiffs were not sanctioned by the court. The trial court found, *inter alia*, that the complaint was not well grounded in law or in fact. The court held that a reasonable inquiry into the matters alleged in the complaint would have enabled the respondents to ascertain "the invalidity and lack of merit" of their allegations. The amount of the sanctions was based upon Harriet's costs in defending against plaintiffs' suit. It is from this May 23 order that respondents appeal.

■ Section 2—611 of the Code of Civil Procedure provides, in pertinent part:

> "Sanctions. Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name ***. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading ***; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading *** is signed in violation of this Section, the court, upon motion or upon its own initiative, shall impose *** an appropriate sanction ***." (Ill. Rev. Stat. 1989, ch. 110, par. 2—611.)

Sanctions may, therefore, be imposed against an attorney where there is insufficient inquiry into the facts of the case or existing law.

Harriet's petition alleged that the original complaint revealed a lack of good faith on the part of plaintiffs and their attorneys. It further stated that none of the claims advanced by plaintiffs was warranted by existing law nor did the complaint contain good-faith arguments for the extension, modification, or reversal of existing law. The petition alleged that a reasonable inquiry by plaintiffs' attorneys would have revealed the invalidity of their clients' claims and the lack of merit in the complaint. Lastly, the petition alleged that as a result of this lawsuit Harriet incurred expenses totaling $7,155.48 and that

she was entitled to sanctions against plaintiffs and their attorneys as provided for in section 2—611. On appeal, Harriet maintains that the trial court did not err in awarding her $7,000 in sanctions against respondents.

■■ In *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, this panel recently held that section 2—611 sanctions may not be imposed to penalize a party because of a failure to prevail in the litigation of their case. (*Chicago Title & Trust Co.*, 177 Ill. App. 3d at 621-22.) The section does not empower the trial court to impose sanctions simply because an argument or theory of recovery is found to be unjustified. *Chicago Title & Trust Co.*, 177 Ill. App. 3d at 622.

The trial court, in the instant case, awarded sanctions against respondents because it found their theory of recovery to be unjustified. The court held that respondents' reliance on *Labarbera v. Labarbera* (1983), 116 Ill. App. 3d 959, to support their constructive trust theory was misplaced. The trial court distinguished *Labarbera* on grounds that *Labarbera* involved an intestate estate and in the instant case there was a will in existence, the implication being that a constructive trust may not be imposed where there is an existing will. Sanctions were awarded based upon the trial court's belief that respondents' theory of recovery was contrived and lacked meaningful investigation of the facts or existing law. The trial court also found that the requested accounting was inappropriate in that an accounting had already been prepared at the time of plaintiffs' request.

A trial court's award of fees pursuant to section 2—611 sanctions will not be disturbed absent an abuse of discretion. (*In re Custody of Caruso* (1989), 185 Ill. App. 3d 739, 744.) Although the award of fees is discretionary, we find that the trial court's sanctioning of respondents was unwarranted in this case.

■■ In *Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, this panel provided a thorough explanation of what is required of counsel in making a "reasonable inquiry" into the facts and existing law prior to the filing of a complaint. We stated that "[w]hether a particular inquiry was 'reasonable' must be determined by an objective standard based upon the circumstances existing at the time the pleading or other legal paper was presented to the court." (*Chicago Title & Trust Co.*, 177 Ill. App. 3d at 623.) We also found that the advisory committee notes to Federal Rule 11, the Federal counterpart to section 2—611, instructive in ascertaining the purpose of section 2—611. We noted that " '[t]he rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.' " (*Chicago Title & Trust Co.*, 177 Ill. App. 3d at 623, quoting Advisory

Committee Notes to Federal Rule 11, 97 F.R.D. 165, 199 (1983).) Moreover, this panel noted that a trial court is not empowered by section 2–611 to impose a sanction simply because it found an argument or requested ground for relief to be unjustified. *Chicago Title & Trust Co.*, 177 Ill. App. 3d at 622.

■ Respondents' argument that a constructive trust should be imposed based upon *Labarbera v. Labarbera* (1983), 116 Ill. App. 3d 959, may be considered tenuous but would not warrant the imposition of sanctions. In *Labarbera,* the plaintiff brought an action against his brother's widow for a constructive trust over funds which belonged to his deceased parents. These funds were allegedly misappropriated by the plaintiff's brother, who had since died. Apparently, prior to the plaintiff's brother's death, the plaintiff and his brother had entered into an agreement in which the plaintiff was to receive certain funds from their parents' estate. The funds, however, were never given to the plaintiff.

The appellate court, in reversing the trial court's decision, allowed for the imposition of a constructive trust. The court took into consideration principles of equity and the fact that an agreement had been reached between the plaintiff and his brother regarding the distribution of funds in their parents' estate. (*Labarbera,* 116 Ill. App. 3d at 965.) The appellate court held that the funds had been obtained by the plaintiff's brother by virtue of the familial and confidential relationship between the plaintiff's brother and his father. Although the court concluded that the plaintiff's claim was based upon his statutory intestate share of his parents' estate (*Labarbera,* 116 Ill. App. 3d at 964 n. 2), its imposition of the constructive trust was due to the misappropriation of the funds by the plaintiff's brother.

We do not find the trial court's factual distinguishing of *Labarbera* persuasive. Nor do we find respondents' theory of recovery so untenable as would warrant sanctions. The fact that *Labarbera* involved an intestate estate does not rule out the possibility that a constructive trust may be imposed in similar circumstances where there is a will in existence. As respondents argue, constructive trusts and wills need not be mutually exclusive. A constructive trust may be imposed despite the existence of a will. See *Hobin v. O'Donnell* (1983), 115 Ill. App. 3d 940, 942; *Neurauter v. Reiner* (1969), 117 Ill. App. 2d 141, 146-47.

A constructive trust is simply a restitutionary remedy which may be imposed to compel one who unfairly holds property to convey it to another to whom it justly belongs. (*Zack v. Sims* (1982), 108 Ill. App. 3d 16, 29.) "[A] constructive trust may be imposed *whenever* facts are

shown in which a person holding property would be unjustly enriched if he were permitted to retain that property." (Emphasis added.) (*Zack*, 108 Ill. App. 3d at 29.) "Constructive trusts are divided into two general groups—one, where actual fraud exists, and the other, where there exists a confidential or fiduciary relationship." *David v. Russo* (1980), 91 Ill. App. 3d 1023, 1027.

While fraud is not alleged in the instant case, we find that it is not too far-fetched for respondents to allege that a confidential relationship existed between plaintiffs and Gordon by virtue of their familial relationship. "There are no set bounds as to what type [of] relationship is necessary to invoke such protection. 'The origin of the confidence and the source of influence are immaterial. It exists when one person trusts in and relies on another.' " (*David*, 91 Ill. App. 3d at 1027, quoting *Anderson v. Lybeck* (1958), 15 Ill. 2d 227, 232.) Plaintiffs alleged that "Gordon L. Leckrone occupied a special position of confidence and trust with plaintiffs."

In light of our decision reversing the trial court's award of sanctions, we need not address the second issue raised by respondents concerning the excessiveness of the imposed sanctions.

For the foregoing reasons, the decision of the trial court is reversed.

Reversed.

JIGANTI, P.J., concurs.

JUSTICE McMORROW, dissenting:

I respectfully dissent from the majority's reversal of the trial court's imposition of sanctions on respondent law firm (hereinafter referred to as "respondent") pursuant to section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). Section 2—611 authorizes a trial court to impose sanctions when an attorney has failed to perform a reasonable prefiling investigation to determine whether the client's position is well grounded in law and fact. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) The imposition of sanctions under section 2—611 is subject to reversal on appeal only if the court abused its discretion. (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 625, 532 N.E.2d 595.) I dissent because I do not agree with the determination of the majority that the able trial court abused its discretion.

The trial court in the instant cause ordered that respondent pay $7,000 towards the expenses incurred by defendant to defend the suit

brought by plaintiffs on the advice of respondent. The court imposed the sanctions pursuant to section 2—611 because the court found that the complaint filed by the respondent on plaintiffs' behalf was not well grounded in fact and warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. The record fully supports the trial court's determination that, based on established legal precedent, the complaint could not be legally supported, the complaint was factually inadequate, and the respondent failed to make an objectively reasonable investigation into the law and facts prior to filing the complaint. Consequently, I find no abuse of the trial court's discretion justifying reversal.

## I

The pertinent facts precipitating entry of section 2—611 sanctions upon the respondent are not in dispute. Respondent filed suit on behalf of plaintiffs, who are the grandchildren of Anthony and Hattie Lecrone. According to the record, Anthony and Hattie each had separate wills. Anthony's will left his entire estate upon his death to Hattie. If Hattie predeceased Anthony, Anthony's will left half of his estate to his son, Gordon Leckrone (Gordon), and half of the estate to the plaintiffs. Hattie's will left virtually all of her estate to Anthony. If Anthony predeceased Hattie, Hattie's will left her entire estate to Gordon to the exclusion of plaintiffs, except for a $1,000 bequest to each of the plaintiffs. Under Hattie's will, if Gordon predeceased Hattie, plaintiffs would inherit the entire estate, to the exclusion of Gordon's wife, Harriet Leckrone (Harriet), and Gordon's children. Respondent prepared and filed plaintiffs' complaint, alleging that plaintiffs and Gordon entered into an oral agreement whereby Gordon agreed that, if he survived Hattie, his mother, and inherited her estate, he, Gordon, would share half of his inheritance with the plaintiffs. Pursuant to that oral agreement, plaintiffs agreed to share half of Hattie's estate with Gordon's wife, Harriet, and Gordon's children, in the event that Gordon predeceased Hattie. The plaintiffs' complaint alleged that Gordon "stated that he felt a moral obligation to make such distribution despite the fact that the terms of Hattie Lecrone's Will only required him to make payments of $1,000.00 to each of the Plaintiffs." Attached to the complaint were copies of two letters written by Gordon to one of the plaintiffs that referred to and acknowledged this alleged oral agreement and Gordon's intention to execute a will that would ensure plaintiffs' receipt of half of Hattie's estate, in the event that Gordon died before making such distribution in full.

The complaint included a copy of Gordon's last will and testament, reflecting such distribution to the plaintiffs in specific bequests to them.

Plaintiffs' complaint alleged that Gordon died before making full distribution to plaintiffs. The complaint stated that plaintiffs were informed after Gordon's death that there were insufficient funds in his estate to satisfy his specific bequests to the plaintiffs. Plaintiffs alleged that they had received a written statement showing disposition of Gordon's estate that prevented distribution to the plaintiffs. A copy of this document was attached to the plaintiffs' complaint.

Because they did not receive the funds allegedly promised them by Gordon, one of the plaintiffs contacted respondent to determine whether plaintiffs had any legal recourse against Gordon's estate, or against Gordon's wife, Harriet. According to the record, the respondent sent plaintiffs an opinion letter, which stated that the plaintiffs "may have a potential cause of action against the Estate of [Gordon] and his wife for the imposition of a constructive trust on all monies received by [Gordon] and his wife from the estates of your grandparents." The respondent's letter further stated that a "complaint for imposition of constructive trust is not one that is based on recovery or compensation under any theory of tort or contract law." According to the letter, respondent stated that "no cause of action can be made on your behalf for breach of contract law" and that "Illinois does not recognize the existence of a contract for which the consideration is love and affection, or moral obligation." The respondent's opinion letter provided the following analysis of the clients' "potential" constructive trust claim:

> "The complaint for constructive trust is a restitutionary remedy which arises by operation of law and is imposed by a court on equitable and public policy grounds, in situations where a person holding money or property would profit by a wrong or be unjustly enriched at the expense of another if he were permitted to retain it. It is our opinion that such a cause of action can be maintained on your behalf showing that your uncle [Gordon] and his wife received one-half [*sic*] of the estate of your grandparents and that there was an agreement between you and your uncle that your side of the family would be entitled to one-half of that estate. Our firm would attempt to base a complaint for constructive trust on the case of *Labarbera v. Labarbera*."

The respondent's opinion letter went on to state that it would seek to impose a constructive trust on funds held by Gordon's wife, Harriet, since "she *may have* benefited from the assets which were

received from [the plaintiffs'] grandparents' estates" and *"may have taken assets which were in the name of [Gordon] and converted them either into joint tenancy assets or assets to be held in her sole name."* (Emphasis added.)

The respondent also recommended the filing of an action for an accounting with respect to the funds received by Gordon from Hattie's estate and the disposition of any such assets. The respondent's letter to plaintiffs stated that if an accounting revealed "that your uncle [Gordon] made investments in good faith and/or that he did have extensive medical bills, [you] would have the option of dropping the litigation at any time. However, as no estate has been opened up for your uncle, bringing an action for accounting appears to be the only way to seek to have a full and complete accounting made of your uncle's actions prior to his death."

Thereafter, respondent filed suit on plaintiffs' behalf, against Gordon's estate and against his wife, Harriet. The complaint requested the imposition of a constructive trust, an accounting, and injunctive relief. With respect to the imposition of a constructive trust, the complaint merely alleged that Gordon, "as *** uncle and the primary caretaker of their grandparents, *** occupied a special position of confidence and trust with the Plaintiffs." According to the pleading, "[t]his confidential relationship was evidenced by the frequent correspondence between Gordon Leckrone and the Plaintiffs, his niece and nephews, which reflected the existing oral agreement among the parties, and Gordon Leckrone's intent to distribute one half of the estate of Hattie A. Lecrone to the Plaintiffs should he inherit such property and to so provide for such distribution in his Will." The complaint alleged that "the oral agreement among the parties and such provisions for the Plaintiffs were made by Gordon Leckrone in consideration for the love and affection he felt for the Plaintiffs and, as stated by Gordon Leckrone himself, as a result of the moral obligation he felt toward the Plaintiffs, as the children of his deceased brother." The complaint alleged that "pursuant to the existing agreement between Gordon Leckrone and the Plaintiffs, Plaintiffs are entitled to" half of the funds Gordon inherited from Hattie.

The complaint further alleged that "as a result of the existing confidential relationship, between Gordon Leckrone and the Plaintiffs, a constructive trust should be imposed on the Estate of Gordon L. Leckrone for that amount of funds due to the Plaintiffs in order to avoid the unjust enrichment of Harriet Leckrone and to ensure that the Plaintiffs receive the funds they are justly entitled to pursuant to

the existing oral agreement between Gordon Leckrone and the Plaintiffs."

The complaint also requested an accounting of the funds which Gordon had inherited from Hattie. The plaintiffs alleged that they had been informed there were insufficient funds to distribute to plaintiffs those specific bequests set forth in Gordon's will, and that plaintiffs had been advised of the reasons for this shortfall. Plaintiffs alleged that they had written to Harriet "requesting a full accounting of the estate of Gordon Leckrone, including any and all documents reflecting any purchases, expenses and/or investments by Gordon Leckrone or Harriet Leckrone regarding any and all property in the Estates of Anthony and Hattie Lecrone or owned by Gordon Leckrone." The complaint alleged that Harriet "ha[s] refused and continue[s] to refuse to comply with Plaintiffs' request for accounting." According to the pleading, the plaintiffs, "as grandchildren of Anthony and Hattie Lecrone and by virtue of the oral agreement made between Plaintiffs and [Gordon] prior to his death, are beneficiaries and interested parties in the Estate of [Gordon] and are entitled to receive an accounting as to the status of the Estate and the distribution of any and all assets contained therein."

The complaint, in a separate count for injunctive relief, requested an order restraining Harriet from dissipating assets derived from the estates of Gordon or his parents.

In response to the plaintiffs' complaint, Harriet filed a motion to dismiss the pleading for failure to state a claim for which relief could be granted. (Ill. Rev. Stat. 1987, ch. 110, par. 2—615.) The motion to dismiss argued in pertinent part that, pursuant to the terms of the wills of Anthony and Hattie Lecrone, the entire estate of Hattie had rightfully passed to Gordon. The motion also pointed out that Gordon's will provided for a gift to the plaintiffs, but that Gordon's estate contained insufficient funds to satisfy these specific bequests. The motion to dismiss noted that an accounting, attached as an exhibit to plaintiffs' complaint, had already been provided to the plaintiffs. This accounting set forth the disposition of the various estates and explained the reasons for the shortfall in Gordon's estate. In her second amended motion to dismiss, Harriet requested that the respondent and the plaintiffs be sanctioned, under section 2—611, for their failure to make a reasonable investigation into the law and facts underlying the plaintiffs' complaint.

The respondent did not file a response to the motion to dismiss or file a motion for leave to amend the complaint. The respondent also did not draft or file a response to Harriet's request for fees under

section 2—611. Rather, the respondent sought and was allowed leave to withdraw as counsel for the plaintiffs. Thereafter, before the date on which the motion to dismiss was scheduled to be heard by the trial court, respondent advised the plaintiffs of the withdrawal order entered by the court, and advised plaintiffs that "in order to protect your interests, it is [*sic*] your own appearance in this cause [*sic*]. It is our further suggestion, that said new counsel should consider the advisability of an [*sic*] voluntary dismissal of this cause, so that sanctions as requested in the motion to dismiss may be avoided."

The record indicates that the plaintiffs did not obtain substitute counsel, and that the plaintiffs did not appear at the trial court's hearing on the motion to dismiss. Following the hearing, the trial court allowed the motion to dismiss and dismissed the entire complaint with prejudice. The trial court continued the matter for consideration of Harriet's petition for fees under section 2—611. Following briefing by all parties and hearing on the section 2—611 petition, the trial court imposed sanctions upon respondent in the amount of $7,000. In its oral pronouncements, the trial court observed that its decision was based "only [on] an objective standard and [did] not rely[ ] on hindsight." The court went on to state:

"I have reviewed the *Labarbera* case and for the life of me I can't see how any objective lawyer could have believed that that case would control these facts and give rise to a potential for recovery. *** To my view the theory from the very beginning is unsupportable; including the letter to the client from [respondent]. The letter is so contrived or the theory is so contrived that it cannot be described as the product of imaginative thinking or artful lawyering. It is the product of the most charitable thing I could say is wishful thinking.

Let's throw something into court and hope that Harriet Lecrone [*sic*] will throw some money at the file. That's all this file says to me.

I'm satisfied that there was no meaningful investigation of the law or the facts. I'm satisfied that the *** plaintiffs' lawyers had on hand sufficient knowledge and sufficient information from their client to know that this complaint was, if not frivolous, then clearly inappropriate to be presented in a serious fashion.

The accounting *** was not only inartfully drafted, the accounting count flies in the face of the fact that the accounting was at hand at the time that it was asked for, with no repre-

sentation that the accounting at hand was in any fashion inappropriate."

## II

At the time respondent filed suit on behalf of the plaintiffs, section 2—611 of the Illinois Code of Civil Procedure governed the nature and extent of an attorney's obligation to analyze the legal and factual basis of a client's claim. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) Section 2—611 requires an attorney to certify that he has made an objectively reasonable investigation into the factual and legal basis of his client's claims, and to certify that this investigation reveals the client's position is well grounded in law and fact. (Ill. Rev. Stat. 1987, ch. 110, par. 2—611.) It is the province of the trial court to determine whether an attorney's legal and factual investigation has been objectively reasonable in light of all the surrounding circumstances. (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 623, 532 N.E.2d 595.) The trial court's conclusion is entitled to great weight and deference and will be disturbed only if it is against the manifest weight of the evidence. *Chicago Title & Trust*, 177 Ill. App. 3d at 625.

## A

The majority's decision to reverse rests upon whether or not respondent reasonably believed that existing law would warrant the imposition of a constructive trust on the allegations in the complaint and in the factual setting of this case. Illinois law regarding imposition of a constructive trust is well established. "A constructive trust is an equitable remedy imposed by a court to prevent the unjust enrichment of a party through actual fraud or breach of a fiduciary relationship. [Citations.]" (*In re Liquidation of Security Casualty Co.* (1989), 127 Ill. 2d 434, 447, 537 N.E.2d 775.) The Illinois Supreme Court in *Suttles v. Vogel* (1988), 126 Ill. 2d 186, 193-94, 533 N.E.2d 901, stated:

> "A constructive trust is generally imposed in two situations: first, where actual or constructive fraud is considered as equitable grounds for raising the trust and, second, where there is a fiduciary duty and a subsequent breach of that duty. [Citations.] A constructive trust may also arise when duress, coercion or mistake is present. [Citation.] *Some form of wrongdoing is a prerequisite to the imposition of a constructive trust.* [Citation.]
>
> *A constructive trust will not be imposed unless the complaint makes specific allegations of wrongdoing* [citations], such

as fraud, *breach of* fiduciary duty, duress, coercion or mistake. Furthermore, the grounds for imposing a constructive trust must be so clear, convincing, strong and unequivocal as to lead to but one conclusion. [Citations.]" (Emphasis added.) See also *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 499 N.E.2d 1319; *Perry v. Wyeth* (1962), 25 Ill. 2d 250, 184 N.E.2d 861; *Dial v. Dial* (1959), 17 Ill. 2d 537, 162 N.E.2d 404; *Gluth Brothers Construction, Inc. v. Union National Bank* (1988), 166 Ill. App. 3d 18, 518 N.E.2d 1345.

The complaint filed and drafted by the respondent did not allege the existence of actual or constructive fraud. Nor did the complaint request a constructive trust because of duress, coercion, or mistake. Significantly, the plaintiffs' complaint did not allege any "wrongdoing" or a *breach* of fiduciary duty. The complaint failed to allege facts to establish a fiduciary relationship. On the legal insufficiency of the complaint in this respect alone, the trial court was correct in granting defendant's motion to dismiss.

The complaint alluded to the existence of a "confidential relationship" between plaintiffs and Gordon. Although the terms "confidential" and "fiduciary" have been used interchangeably (see, *e.g., In re Estate of Kieras* (1988), 167 Ill. App. 3d 275, 521 N.E.2d 263), I will utilize the term "fiduciary" for the sake of clarity.

A fiduciary relationship arises when "one party has reposed trust and confidence in another who thereby gains an influence and superiority over the other. [Citation.]" (*Taino v. Sanchez* (1986), 147 Ill. App. 3d 871, 874, 498 N.E.2d 571.) Thus, a "fiduciary relationship exists where there is a special confidence reposed on one side and a resulting superior knowledge and influence on the other. [Citation.]" (*A.T. Kearney, Inc. v. INCA International, Inc.* (1985), 132 Ill. App. 3d 655, 661, 477 N.E.2d 1326; see also *Chicago Land Clearance Comm'n v. Yablong* (1960), 20 Ill. 2d 204, 170 N.E.2d 145; *In re Estate of Shedrick* (1984), 122 Ill. App. 3d 861, 462 N.E.2d 581.) The source of the relationship may be moral, social, domestic, or personal. (*Anderson v. Lybeck* (1958), 15 Ill. 2d 227, 232, 154 N.E.2d 259.) Significant factors in the determination of whether a fiduciary relationship exists include the degree of kinship between the parties, the differences in their ages, health, mental condition, education, and business experience, and the degree of trust reposed in the dominant party. (*Kester v. Crilly* (1950), 405 Ill. 425, 91 N.E.2d 419; *In re Estate of Kieras* (1988), 167 Ill. App. 3d 275, 521 N.E.2d 263; *Metropulos v. Chicago Art Glass, Inc.* (1987), 156 Ill. App. 3d 727, 509 N.E.2d 1068.) Ultimately, there must be a showing of domination and subser-

vience resulting in a benefit to the grantee. (*Maley v. Burns* (1955), 6 Ill. 2d 11, 126 N.E.2d 695.) In addition, the dominant party in whom confidence has been reposed must have gained an advantage, by virtue of that confidence and trust, in the procurement of the property which forms the corpus of the trust. See *Compton v. Compton* (1953), 414 Ill. 149, 111 N.E.2d 109; see also *Beelman v. Beelman* (1984), 121 Ill. App. 3d 684, 460 N.E.2d 55; *Whewell v. Cox* (1977), 54 Ill. App. 3d 179, 369 N.E.2d 330.

In light of this precedent, the complaint drafted and filed by the respondent was legally insufficient to state a claim for the imposition of a constructive trust. To support its request for a constructive trust, the complaint drafted and filed by respondent alleged in vague and conclusory terms the existence of a "confidential relationship" between the plaintiffs and Gordon, because Gordon was the plaintiffs' "uncle and the primary caretaker of their grandparents *** [and therefore] occupied a special position of confidence and trust with the Plaintiffs." The pleading alleged that the correspondence between Gordon and the plaintiffs regarding the parties' alleged oral agreement was evidence of the "confidential relationship" between Gordon and the plaintiffs. The complaint further alleged that the oral agreement was made by Gordon "in consideration for the love and affection he felt for the Plaintiffs and *** as a result of the moral obligation he felt toward the Plaintiffs, as the children of his deceased brother." The pleading alleged that plaintiffs were entitled to half of their grandparents' estate "pursuant to the oral agreement" between Gordon and plaintiffs, and that a constructive trust should be imposed "in order to avoid the unjust enrichment of [Harriet] and to ensure that the Plaintiffs receive the funds they are justly entitled to pursuant to the existing oral agreement" between Gordon and the plaintiffs.

Thus, stripped to its essentials, the complaint drafted and filed by the respondent suggested the existence of a fiduciary relationship between Gordon and the plaintiffs because: (1) Gordon was the plaintiffs' uncle and the primary caretaker of their grandparents; (2) the plaintiffs and Gordon had an oral agreement regarding distribution of the grandparents' estate; and (3) this oral agreement was founded on Gordon's sense of "moral obligation" to the plaintiffs and his "love and affection" for the plaintiffs.

None of these circumstances establishes the existence of a fiduciary relationship between Gordon and the plaintiffs: the familial ties between the parties, including a sense of moral obligation or love and affection, were insufficient to set forth a fiduciary relationship. (*Perry*

*v. Wyeth* (1962), 25 Ill. 2d 250, 184 N.E.2d 861; see also *Metropulos v. Chicago Art Glass, Inc.* (1987), 156 Ill. App. 3d 727, 509 N.E.2d 1068; *Beelman v. Beelman* (1984), 121 Ill. App. 3d 684, 460 N.E.2d 55.) Also, as the respondent acknowledged in its opinion letter to the plaintiffs, love and affection do not constitute consideration for a contract. (*O'Neill v. DeLaney* (1980), 92 Ill. App. 3d 292, 415 N.E.2d 1260.) In addition, an oral agreement does not establish the existence of a fiduciary duty, nor does breach of a contract give rise to a constructive trust. *Swanson v. Randall* (1964), 30 Ill. 2d 194, 195 N.E.2d 656; *Evans v. Berko* (1951), 408 Ill. 438, 97 N.E.2d 316; *Estate of Kern* (1986), 142 Ill. App. 3d 506, 491 N.E.2d 1275.

There is nothing in the record to indicate that the respondent consulted the well-established, relevant Illinois legal precedent set forth above when it investigated the legal validity of the client's proposed constructive trust claim. Instead, according to the record, respondent identified and relied exclusively upon one case, *Labarbera v. Labarbera* (1983), 116 Ill. App. 3d 959, 452 N.E.2d 684, with respect to the respondent's recommendation that the plaintiffs file suit for the imposition of a constructive trust. Respondent relied on the *Labarbera* case in both the trial court and before this court for its position that the facts in the instant case would give rise to a potential for recovery. However, the trial court correctly determined that the *Labarbera* case provides no support for the respondent's legal advice to the plaintiffs.

In *Labarbera*, the plaintiff filed suit for the imposition of a constructive trust over certain funds held by the wife of the plaintiff's deceased brother. Plaintiff argued that his brother had misappropriated funds held by their parents, who had died intestate. Plaintiff's brother had executed a "declaration" wherein he acknowledged that plaintiff was entitled to half of their parents' estate pursuant to rules of intestate succession. Plaintiff's brother retained all of the parents' estate for his own benefit and failed to distribute plaintiff's share to him. When the brother died intestate, plaintiff sought the imposition of a constructive trust upon half of the funds, held by the wife of his deceased brother, that had been inherited from the parents.

The appellate court determined that there existed a fiduciary relationship between plaintiff and his brother. The court noted "the obvious moral obligations which arise from this [familial] relationship" (116 Ill. App. 3d at 966) between plaintiff's brother and their parents. In this regard, the court took into account that the plaintiff's brother had always handled the parents' affairs in the past, and that the plaintiff trusted his brother to properly convey half of the parents' es-

tate to the plaintiff. The court reasoned that "the existence of the confidential relationship between [plaintiff's brother] and [his] parents created a presumption of influence which was acknowledged by [plaintiff's brother] when he signed the declaration" (116 Ill. App. 3d at 966) recognizing plaintiff's entitlement, under intestate succession law, to half of the parents' estate. The court concluded that plaintiff's brother received "unjust enrichment *** by virtue of this relationship." 116 Ill. App. 3d at 966.

The instant cause bears no resemblance to the significant facts of *Labarbera*. In *Labarbera*, the plaintiff was lawfully entitled to half of the proceeds of his deceased parents' estate. The plaintiff in *Labarbera* placed trust and confidence in his brother to preserve the plaintiff's vested interests in the estate and to eventually convey plaintiff's share to him. In *Labarbera*, there was legal entitlement to plaintiff's share which was in the possession of the wife of plaintiff's deceased brother. In the case at bar, the plaintiffs were not entitled, under their grandparents' wills, to half of the proceeds of the grandparents' estate. Anthony's will left his entire estate to his wife, Hattie, upon his death. According to the terms of Hattie's will, the entire estate passed to Gordon, with the exception of small specific bequests which plaintiffs received. Consequently, Gordon inherited and was lawfully in possession of the bulk of the estate pursuant to the terms of the wills of Anthony and Hattie. As the owner of the estate he inherited, Gordon had the absolute right to dispose of his property during his life as he saw fit. *In re Estate of Puetz* (1988), 167 Ill. App. 3d 807, 521 N.E.2d 1277.

There is nothing in plaintiffs' complaint to show that Gordon came into possession of the estate because of any undue influence Gordon exerted upon Hattie or upon plaintiffs. Gordon wrote to plaintiffs that he felt a moral obligation to divide one-half of the estate with the plaintiffs. However, Gordon's expression of this moral obligation did not prompt plaintiffs to part with any present interest plaintiffs had in their grandparents' estate. Plaintiffs did not allege any facts to show that Gordon or his wife, Harriet, undertook any wrongful act that caused the failure of the specific bequests to plaintiffs in Gordon's will. Consequently, there is nothing in the record to show that Gordon or his wife, Harriet, was unjustly enriched, to the plaintiffs' disadvantage, by the parties' alleged oral agreement. Failing any specific allegation of undue influence and unjust enrichment, plaintiffs could not state a claim for a breach of a fiduciary duty under *Labarbera*. The majority correctly notes that the imposition of the constructive trust in *Labarbera* "was due to the *misappropriation* of the

funds by the plaintiff's brother." (Emphasis added.) (220 Ill. App. 3d at 379.) There is no indication or allegation of misappropriation in the case at bar.

In my opinion, the trial court properly found that an objectively reasonable analysis of *Labarbera* demonstrates that it provides no legal support in the case at bar for the respondent's recommendation that suit be filed for the imposition of a constructive trust. Therefore, I do not accept the majority's determination that the complaint drafted and filed by the respondent was well grounded in law.

With respect to whether a fiduciary relationship existed, the majority reasons that it was "not too far-fetched for respondents to allege that a confidential relationship existed between plaintiffs and Gordon by virtue of their familial relationship." (220 Ill. App. 3d at 380.) The majority also states that respondent alleged in the complaint that Gordon "occupied a special position of confidence and trust with plaintiffs." 220 Ill. App. 3d at 380.

The majority neglects to note that there are no specific facts alleged in the plaintiffs' complaint to demonstrate the existence of "trust and confidence" that would constitute a fiduciary relationship between plaintiffs and Gordon. The majority is in error in relying upon the family relationship between the parties to demonstrate a fiduciary relationship. In *In re Estate of Kieras* (1988), 167 Ill. App. 3d 275, 521 N.E.2d 263, a gift to a son by the father was challenged by the remaining siblings. The *Kieras* court recognized that even a relationship between a parent and child is not a fiduciary relationship as a matter of law. (*Kieras*, 167 Ill. App. 3d at 280.) "It has been well established *** that the mere fact of blood relationship *** does not establish a confidential or fiduciary relationship. [Citation.]" (*Perry v. Wyeth* (1962), 25 Ill. 2d 250, 253, 184 N.E.2d 861; see also *Metropulos v. Chicago Art Glass, Inc.* (1987), 156 Ill. App. 3d 727, 509 N.E.2d 1068; *Beelman v. Beelman* (1984), 121 Ill. App. 3d 684, 460 N.E.2d 55; *Edwards v. Miller* (1978), 61 Ill. App. 3d 1023, 378 N.E.2d 583.) Thus, contrary to the majority holding, a fiduciary relationship between Gordon and plaintiffs does not arise by virtue of the uncle-nephews-niece relationship as a matter of law. It was, therefore, incumbent upon plaintiffs to allege facts giving rise to a fiduciary relationship and breach thereof. The complaint utterly failed to do this.

B

The record also shows that the respondent failed to make an objectively reasonable investigation into the facts supporting the plain-

tiffs' claims. The majority wholly neglects to consider this additional violation of section 2—611.

Under section 2—611, an attorney cannot institute legal proceedings in order to determine whether there is, in fact, sufficient evidence to support the client's position. (*Chicago Title & Trust*, 177 Ill. App. 3d at 623.) In its opinion letter, the respondent suggested that filing suit was appropriate because Harriet *"may have* benefited from the assets which were received from the plaintiffs' grandparents' estates" and *"may have* taken assets which were in the name of Gordon LeCrone and converted them either into joint tenancy assets or assets to be held in her sole name." (Emphasis added.) In addition, the respondent recommended that if it was determined that Gordon "made investments in good faith and/or *** [had] extensive medical bills, [the plaintiffs] would have the option of dropping the litigation at any time." These recommendations from the respondent violated section 2—611. Under section 2—611, an attorney cannot " ' "file now and investigate later." ' " (*Chicago Title & Trust*, 177 Ill. App. 3d at 623, quoting *In re Mitan* (1987), 119 Ill. 2d 229, 255, 518 N.E.2d 1000; see also *In re TCI Ltd.* (7th Cir. 1985), 769 F.2d 441.) It is also noteworthy that after Harriet filed a motion to dismiss the complaint and requested section 2—611 sanctions, the respondent withdrew from the case and suggested that plaintiffs retain substitute counsel to "consider the advisability of an [*sic*] voluntary dismissal of this cause, so that sanctions as requested in the motion to dismiss may be avoided."

The record supports the trial court's conclusion that "there was no meaningful investigation of the law or facts" by the respondent before it filed suit on plaintiffs' behalf. I cannot accept the majority's unjustified deviation from and reversal of the trial court's sound judgment in the instant cause. In my opinion, the trial court clearly did not abuse its discretion.

For these reasons, I respectfully dissent. In light of the majority's disposition, I do not address the parties' remaining arguments.